Strasner *v*. Strasner.

5-2182                                    338 S. W. 2d 679

Opinion delivered September 26, 1960.

[Rehearing denied October 24, 1960]

*Digby & Tanner,* for appellant.

*Jack L. Lessenberry,* for appellee.

Jim Johnson, Associate Justice.   This appeal concerns a separation and property settlement agreement between L. M. Strasner, Sr., appellant, and his wife, Mildred E. Strasner, appellee.

The parties were married on July 14, 1941. They are the parents of one child, a son who was 18 years of age and a freshman at the University of Arkansas at the time of the trial. On February 10, 1959, the parties separated and have not resumed their marital relationship. On that date, appellee, with her cousin as a witness, followed appellant and at about 7:30 in the evening they observed appellant in the company of another woman. Appellant was inside an apartment house in the lighted living room, and appellee saw them through the door. She stated that they were preparing to leave on a date. Appellee confronted them as they came out of the building and told them they would hear from her lawyer. This was the only instance of alleged infidelity of the appellant. On February 13, 1959, appellant went back to the home to get his clothes and personal effects. At that time appellee told him she was going to sue the other woman for alienation of affections. A couple of weeks later, appellee's attorney contacted appellant in regard to the separation and domestic situation of the parties and a settlement of their property rights. Negotiations continued for a couple of weeks between appellant and appellee's attorney which culminated in the execution of a property settlement agreement, which is the subject matter of this action. No action for divorce has ever been instituted by either party.

This agreement, dated March 13, 1959, awarded appellee the unencumbered home of the parties worth approximately $12,000 to $15,000; the household furniture; title to an automobile worth approximately $2,000; a bank account of approximately $360; and in addition, appellant agreed to pay appellee $200 a month for her lifetime and $50 a month for the support and maintenance of their son until he completed his education. The only property which appellant retained was a savings account of $124. However, the agreement provided that: in the event either party instituted a divorce action, the property settlement agreement would constitute a full and complete settlement of all property rights in such action, and that neither party would have the

right to obtain any part of the property of the other; neither party would claim or demand suit money, alimony or attorney's fees should either party institute an action against the other (except any proceeding made necessary to enforce the terms of the agreement); *appellee would not prosecute any legal cause she may have acquired prior to the date of the agreement*[1] except any action she may have acquired against appellant; each party would have the right to enjoy all property they now owned, or which they might acquire, independent of any claim or right of the other party with the right to dispose of the same; each party would have the right to dispose of by last will and testament property now owned or which either might acquire, independent of any claim of the other; each party would execute whatever documents were necessary to promptly carry out the terms of the agreement.

At the time of the settlement, the parties possessed a washing machine which was not paid for. Appellee declined to make monthly payments upon the indebtedness existing against the washing machine and appellant contends he was told by appellee's attorney that he was required to do so, and he has continued to make these payments. Appellant executed proper deed of conveyance to real property to appellee and transferred title to the automobile to appellee and performed all other conditions and covenants incumbent upon him to perform until August 15, 1959, at which time he ceased making the monthly payments specified in the agreement to appellee. On August 19, 1959, appellee instituted this action in Chancery Court seeking specific performance of the written property settlement agreement. A trial on the merits was held on October 19, 1959, the only witnesses being the appellee, appellee's attorney and the appellant. The execution of the instrument was not disputed and the sole issue presented to the court for consideration was the validity of the instrument sued upon. The Chancellor ruled in favor of appellee, decreed specific performance of the property settlement agreement, awarded judgment for delinquent payments and

---

[1] Emphasis ours.

ordered appellant to make future payments in accordance with the terms and provisions of the property settlement agreement. The decree was rendered by the Chancellor on November 20, 1959, and this appeal was duly prosecuted and perfected.

For reversal, appellant relies upon the following points:

1. Court lacked jurisdiction of subject matter; 2. Trial Court was biased and prejudiced; 3. Instrument sued upon is invalid for lack of consideration; 4. Appellee has breached the agreement.

We will discuss the points in the order in which they are raised.

*Jurisdiction.* Appellant eloquently argues that the breach of the contract, if any, of the appellant's refusal to make monthly payments as provided in the agreement was compensable by damages and that appellee had a plain, complete and adequate remedy at law. Appellant further argues that the criterion for suits for specific performance is whether or not there is an adequate remedy at law and cites in support of his argument the leading case of *McDaniel* v. *Orner,* 91 Ark. 171, 120 S. W. 829. Except for the nature of the agreement here involved, ordinarily the theories pursued by appellant are sound law. However, in the instant case our research reveals that the Legislature settled the matter of jurisdiction by the passage of Act 290 of 1941, the pertinent part of which is as follows:

"Courts of equity may enforce the performance of *written agreements* between husband and wife made and entered into *in contemplation of either separation or divorce* and decrees or orders for alimony and maintenance by sequestration of the defendant's property, . . . or by such other lawful ways and means, including equitable garnishments or contempt proceedings as are in conformity with rules and practices of courts of equity." (Emphasis supplied.)

This act follows the general rule as set out in 17A Am. Jur., Divorce and Separation § 919; and 81 C. J. S.

482

Specific Performance § 86, and 42 C. J. S. Husband and Wife § 606. In addition, this Court in *McCue* v. *McCue,* 210 Ark. 826, 197 S. W. 2d 938, relative to alimony which is applicable here, reasoned as follows:

"It was recognized in *Shirey* v. *Hill*, 81 Ark. 137, 98 S. W. 731, that a husband's contract for separate maintenance of his wife is binding. Mr. Justice Wood, in disposing of the argument that Lawrence Chancery Court was without jurisdiction, cited *Wood* v. *Wood,* 54 Ark. 172, 15 S. W. 459. Effect of the decisions is that enforcement of a contract for alimony is an action *for* alimony, as distinguished from an action on debt, although the debt, as such, is recognized as subsisting by reason of agreement between the parties."

*Prejudice*: Appellant forcefully urges that the trial court was biased and prejudiced, and that the appellant did not receive a fair and impartial trial. Appellant further contends that "It is apparent from the examination of the remarks in the record by the trial court that the court was sympathetic to the appellee, and that the appellant did not receive fair consideration of his presentation of the facts." Even though we noted a number of remarks in the record which would have been best left unsaid, upon careful examination we cannot say that such remarks indicated such a personal bias toward the appellant as a matter of fact which would justify our agreement with the contention of appellant under the law. This Court has repeatedly said, even in criminal cases, that "There is no provision of our Constitution or statutes that disqualifies a judge for prejudice." See: *Jones* v. *State,* 61 Ark. 88, 32 S. W. 81. In considering an application for a change of venue, this Court in *Hudspeth* v. *State,* 188 Ark. 323, 67 S. W. 2d 191, very aptly said:

"That personal bias . . . toward the defendant . . . must be shown as a matter of fact, and not as a matter of opinion of the defendant or any other person. The words 'bias' and 'prejudice', as used in the law of the subject under consideration, refer to the mental attitude . . . of the judge towards a party to

the litigation, and not to any views that he may entertain regarding the subject matter involved.''

*Consideration*: Appellant, in support of his contention that ''The instrument sued upon is invalid for lack of consideration,'' cited the case of *McCue* v. *McCue, supra,* as follows:

''Courts generally enforce covenants and promises respecting wife's maintenance and spouses' property in separation deeds, if based on *sufficient consideration,* fair and equal, reasonable and not the result of fraud or coercion, and if separation actually occurred before agreement was made or immediately follows it.'' (Emphasis supplied.)

The briefed contents of the property settlement agreement as heretofore set out renders unnecessary our quoting verbatim the lengthy instrument. A casual reading of the agreement in its entirety reveals that at least seven paragraphs contained therein are beneficial to appellant. Even the appellant on cross-examination admitted that there were ''a few'' provisions which are advantageous to him. We therefore cannot say that the findings of the Chancellor that the agreement was based upon sufficient consideration was against the weight of the evidence.

*Breach*: The last point relied upon for reversal is that the appellee has breached the terms of the contract. Included among the personal property and household furniture and furnishings awarded to the appellee under the property settlement agreement was a washing machine, upon which an indebtedness existed, payable in deferred monthly payments of $26 each. Both parties testified that the washing machine had been purchased in the name of the appellant. This item was not specifically mentioned in the written contract, but there is no dispute as to the appellee being entitled to same. After the execution of subject contract, the question arose as to whose liability it was to make future payments upon this indebtedness. Appellant asked appellee's attorney for information and was told at first that

it was not his obligation. Appellant testified as to a later conversation with appellee's attorney as follows:

"Q. Did I say you would have to pay for it?

"A. You said that she *insisted* on it or words to that effect, so I paid it then." (Emphasis supplied.)

As we view this conversation it amounted to appellee's *interpretation* and not a *requirement* which would constitute a breach of the entire agreement.

From what we have said above on the whole case it necessarily follows that the Chancellor's opinion being supported by the weight of the evidence, the decree is affirmed.

Affirmed.