
SLIP OPINION

Cite as 2013 Ark. 496

# SUPREME COURT OF ARKANSAS

No. CV–13–327

| | |
|---|---|
| STEVE ROSE<br><br>APPELLANT<br><br>V.<br><br>HARBOR EAST, INC.; HARBOR EAST PROPERTY OWNERS ASSOCIATION; RECREATIONAL MANAGEMENT, INC.; IBERIA BANK, SUCCESSOR IN INTEREST TO PULASKI BANK AND TRUST; AND UNKNOWN TENANTS<br><br>APPELLEES | **Opinion Delivered** December 5, 2013<br><br>APPEAL FROM THE MONTGOMERY COUNTY CIRCUIT COURT<br>[NO. CV–2010-66]<br><br>HONORABLE J.W. LOONEY, JUDGE<br><br><br><br>AFFIRMED. |

**PAUL E. DANIELSON, Associate Justice**

Appellant Steve Rose appeals from the circuit court's order granting summary judgment to separate appellees Harbor East Property Owners Association ("the POA") and Recreational Management, Inc. ("Recreational"), and dismissing Rose's complaint for foreclosure with prejudice. On appeal, Rose asserts (1) that the POA and Recreational were estopped from collaterally attacking Rose's order of revivor because it was not void; (2) that the requirements of Arkansas Code Annotated § 16–65–501 (Repl. 2005), pertaining to writs of scire facias, were satisfied; (3) that the service requirements of Arkansas Rule of Civil Procedure 4 have no application to the requirements set forth in the statute; and (4) that equity demands his judgment be revived. We affirm the circuit court's order.

On August 4, 2010, Rose filed a complaint in foreclosure against the POA,

Recreational, and other separate defendants.[1]  The complaint alleged that, on April 21, 1989, in the Montgomery County Chancery Court, Case Number 89-26, Rose and Harbor East, Inc., had entered into a consent judgment, which awarded Rose $176,000, plus interest at eleven and one-half percent, commencing May 1, 1989.[2]  Rose stated in his foreclosure complaint that he had filed a motion to revive the 1989 judgment on March 18, 1999, and that an order reviving the judgment was entered on June 27, 2001.[3]  He further asserted that on February 25, 2009, he filed a subsequent motion to revive the judgment and that an order reviving the judgment was entered on March 11, 2009.[4]  Rose maintained that the judgment had not been satisfied and prayed that he be granted judgment in rem, that the judgment lien be foreclosed, that a sale effectuating the foreclosure be declared, and for costs and attorney's fees.  An amended complaint was filed on May 13, 2011.

On June 26, 2012, the POA filed a motion for summary judgment.[5]  In it, the POA asserted that, because no writ of scire facias had been issued prior to the 2009 order of revivor, Rose's judgment was not revived in accord with section 16-65-501.  Consequently, the POA contended, the 2009 order of revivor was void ab initio for lack of jurisdiction.  Rose

---

[1]The other separate defendants are not parties to the instant appeal.

[2]The record reflects that the consent judgment was filed on April 24, 1989. Amendment 80 to the Arkansas Constitution merged the chancery and circuit courts of the state.  *See First Nat'l Bank of DeWitt v. Cruthis*, 360 Ark. 528, 203 S.W.3d 88 (2005).

[3]The record reflects that the order was filed on July 19, 2001.

[4]The record reflects that the order was filed on March 17, 2009.

[5]Recreational filed a motion to adopt and join the POA's summary-judgment motion; the motion to adopt was granted by the circuit court in its order of summary judgment.

responded that the statute in no way required that a writ of scire facias be issued and that he had properly complied with the statute by filing his petition for writ before his lien expired. He further countered that Arkansas courts had not previously held that personal service, as required for service of a summons under Ark. R. Civ. P. 4, was required in the service of a scire facias. For these reasons, he asserted that his service was proper and, therefore, the court's 2009 order of revivor was valid.

A hearing was held on the motion on September 21, 2012, at which the circuit court heard the arguments of the POA, Recreational, and Rose. On October 5, 2012, the circuit court filed its letter opinion in the matter, wherein it found that the summary-judgment motion "must be granted" and reasoned, in pertinent part, as follows:

> The basis for the decision is that the order of revivor of March 17, 2009 should not have been entered. First, A.C.A. § 16-65-501 mandates that a writ of scire facias be served on the defendant or other specified parties. The record in E-89-26 does not reflect that this was done. A petition was filed but the statute requires more. The purpose of the writ is to put interested parties on notice and to advise them to "show cause" why the judgment should not be revived. (An alternate method under A.C.A. § 16-65-501 is to permit service by publication.) Since no writ was issued (only a petition filed), the order of revivor was improperly entered.
> Second, although there is no set time within which a writ of scire facias must be served, an order entered prior to any proof of service (even if the writ was issued) is also improper. This court apparently failed to check the file for proof of service before signing the order, violating a normal practice of the court.[6]

An order memorializing the circuit court's decision was filed on December 18, 2012, and Rose filed a timely motion to reconsider on December 20 and a timely notice of appeal on January 23, 2013. Rose now appeals the circuit court's order granting summary judgment.

---

[6]The circuit judge who granted summary judgment in this case was same judge who entered the order of revivor in 2009.

3



On appeal, Rose argues that, because a revivor action is not a new action, but the continuation of an old one, the court was not without jurisdiction when it issued the 2009 order of revivor. For this reason, he claims, the order was not void and could not be the subject of a collateral attack. Even assuming arguendo that the 2009 order of revivor was subject to collateral attack, Rose asserts that the order was valid in light of the fact that he complied with the requirements of the apposite statute, Ark. Code Ann. § 16-65-501. Specifically, he claims, he timely filed his petition for writ of scire facias in 2009 and he served the petition, thereby giving the judgment debtor notice of his intent to revive the judgment. Rose contends that the statute does not differentiate between a petition for writ of scire facias and a writ of scire facias; thus, compliance with the statute was had when he timely filed his petition. He further maintains that the statute does not require that proof of service be filed and that Ark. R. Civ. P. 4's requirements are inapplicable. Finally, he urges, should this court find that the 2009 order of revivor was subject to collateral attack and that he failed to properly comply with the requirements of the statute, he should be given the opportunity to correct any deficiencies as equity demands that such an opportunity be provided.

The POA and Recreational similarly counter Rose's contentions. They initially argue that, because the circuit court did not affirmatively and expressly rule on Rose's collateral–attack argument, the issue is not preserved for appeal. Alternatively, they contend that, because no writ of scire facias was issued in 2009, Rose failed to strictly adhere to the method of obtaining the court's jurisdiction as set forth in the statute. They further contend that their attempt to have the 2009 order of revivor declared void is a direct attack and not a collateral

SLIP OPINION

one. They maintain that Rose's filing of his petition for the writ did not satisfy the statute's requirement that a writ be issued by the clerk prior to the order of revivor being entered, and they aver that this court is not able to provide Rose with any equitable relief, even if it was warranted.

Our law is well settled that summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *See City of Malvern v. Jenkins*, 2013 Ark. 24, \_\_\_ S.W.3d \_\_\_. Normally, we determine if summary judgment is proper based on whether evidentiary items presented by the moving party leave a material fact unanswered, viewing all evidence in favor of the nonmoving party. *See Massey v. Fulks*, 2011 Ark. 4, 376 S.W.3d 389. Here, however, the facts are not in dispute, and the circuit court decided the case purely as a matter of statutory interpretation.

The question of the correct application and interpretation of an Arkansas statute is a question of law, which this court decides de novo. *See McLemore v. Weiss*, 2013 Ark. 161, \_\_\_ S.W.3d \_\_\_. We are not bound by the circuit court's decision; however, in the absence of a showing that the circuit court erred, its interpretation will be accepted as correct. *See id*. The basic rule of statutory construction to which all other interpretive guides defer is to give effect to the intent of the drafting body. *See id*. In reviewing issues of statutory interpretation, we first construe a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *See id*. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of

statutory construction. *See id.* It is axiomatic that this court strives to reconcile statutory

provisions to make them consistent, harmonious, and sensible. *See id.*

As an initial matter, we conclude that the issues raised by Rose on appeal are

sufficiently preserved for this court's review. This court recently held that, in an order of

summary judgment, a "circuit court was not required to make specific findings of fact and

conclusions of law, and the failure to do so does not preclude our appellate review of the

order granting summary judgment." *Hardin v. Bishop*, 2013 Ark. 395, at 5, ___ S.W.3d ___,

___. Further, despite the POA and Recreational's objection during the hearing to Rose's

argument that they were estopped from challenging the 2009 order as void, the circuit court

did permit Rose to cite cases related thereto and stated in its order that

> [t]he Motion for Summary Judgment was presented to and considered by the Court
> upon the Pleadings on file, including the Motion for Summary Judgment together
> with the exhibits attached, the Response filed thereto by the Plaintiff together with the
> exhibits attached, and the Reply together with the exhibits attached . . . together with
> the oral arguments advanced by counsel for all of the parties.

In light of the foregoing, we conclude the issue is preserved for our review.

Here, the POA and Recreational sought to have Rose's judgment set aside as void due

to his alleged noncompliance with the statute in obtaining the 2009 order of revivor.[7] This

court has drawn a distinction between direct and collateral attacks, stating as follows:

> A direct attack on a judgment is usually defined as an attempt to reform or vacate it
> in a suit brought in the same action and in the same court for that purpose. On the

---

[7]There is no initial assertion by Rose that neither the POA nor Recreational has any interest that would permit either to bring such a challenge. To the extent he raises the question in his reply brief, this court has held that it will not address arguments made there for the first time. *See, e.g.*, *Coleman v. Regions Bank*, 364 Ark. 59, 216 S.W.3d 569 (2005).

other hand, a collateral attack upon a judgment has been defined to mean any proceeding in which the integrity of a judgment is challenged, except those made in the action wherein the judgment is rendered, or by appeal, and except suits brought to obtain decrees declaring judgments to be void *ab initio*.

*Hooper v. Wist*, 138 Ark. 289, 294, 211 S.W. 143, 145 (1919). We have further quoted with approval that

> [a]s a general rule, an attack upon a judgment is regarded as collateral if made when the judgment is offered as the basis of the opponent's claim. This rule has been applied where the attack is made upon a judgment offered in evidence in a subsequent action or proceeding, as, for example, where the judgment is offered in support of a title, or as a foundation for the application of the doctrine of *res judicata*. . . . The distinction between a direct and collateral attack upon a judgment is sometimes based upon the purpose of the proceeding or action in which the attack is made. Under this distinction, an attack is regarded as direct where the proceeding in which it is made is brought for the purpose of impeaching or overturning the judgment, and as collateral if made in any manner other than by a proceeding the very purpose of which is to impeach or overturn the judgment.

*Brooks v. Baker*, 208 Ark. 654, 661, 187 S.W.2d 169, 172 (1945) (quoting 31 Am. Jur. § 204).

Because the POA and Recreational were attacking the 2009 order's validity in the context of another proceeding, the very purpose of which was *not* to impeach or overturn the judgment, but to foreclose, their attack was a collateral one. Judgments, however, may not be collaterally attacked unless the judgment is void on the face of the record or the issuing court did not have proper jurisdiction.[8] *See Council of Co-Owners for the Lakeshore Resort &*

---

[8]We have drawn no distinction between an ordinary judgment and a judgment entered upon scire facias: "The effect of a judgment entered upon a *scire facias* as an adjudication does not differ from that of other judgments. It cannot be collaterally avoided for mere error or irregularity and until set aside by some proper proceeding, it conclusively establishes the facts necessary to support it as against all persons properly made parties thereto." *Lewis v. Bank of Kensett*, 220 Ark. 273, 276, 247 S.W.2d 354, 356 (1952) (quoting 2 *Freeman on Judgments* § 448). *See also Gen. Amer. Life Ins. Co. v. Cox*, 215 Ark. 860, 223 S.W.2d 775 (1949).

SLIP OPINION

SLIP OPINION

*Yacht Club Horizontal Prop. Regime v. Glyneu, LLC*, 367 Ark. 397, 240 S.W.3d 600 (2006). Accordingly, the threshold question is whether the 2009 order of revivor was void since only under such a circumstance were the POA and Recreational allowed to collaterally attack the order.

The POA and Recreational challenged the 2009 order of revivor, asserting that it was void for lack of jurisdiction due to the fact that no writ of scire facias was issued prior to the order's entry. Section 16-65-501 of the Arkansas Code governs the issuance of a writ for scire facias and provides, in pertinent part:

> (a) The plaintiff or his or her legal representatives may, at any time before the expiration of the lien on any judgment, sue out a scire facias to revive the judgment.
> (b) The scire facias shall be served on the defendant or his or her legal representatives, terre-tenants, or other person occupying the land, and may be directed to and served in any county in this state.
> . . . .
> (d) If upon service or publication of the scire facias, . . . the defendant or any other person interested does not appear and show cause why such judgment or decree shall not be revived, the judgment shall be revived and the lien continued for another period of ten (10) years and so on from time to time as often as may be necessary.
> (e) If a scire facias is sued out before the termination of the lien of any judgment or decree, the lien of the judgment revived shall have relation to the day on which the scire facias issued. However, if the lien of any judgment or decree has expired before suing out the scire facias, the judgment of revival shall be only a lien from the time of the rendition of the judgment.
> (f) No scire facias to revive the judgment shall be issued except within ten (10) years from the date of the rendition of the judgment, or if the judgment shall have been previously revived, then within ten (10) years from the order of revivor.

Ark. Code Ann. § 16-65-501 (Repl. 2005). Scire facias is not the institution of a new suit but is a continuation of the old one, and its object is not to procure a new judgment for the debt but execution of the judgment that has already been obtained. *See Middleton v. Lockhart*, 2012 Ark. 131, 388 S.W.3d 451.

In the instant case, it is undisputed that, while Rose filed a petition for writ of scire facias on February 25, 2009, no writ was issued by the court's clerk prior to the court's 2009 order of revivor. Rose contends that by serving the petition itself, he complied with the statute. We disagree.

The plain language of the statute makes clear that a plaintiff may "sue out" a scire facias to revive the judgment. *See* Ark. Code Ann. § 16-65-501(a). Clearly, Rose did so when he filed his petition for writ of scire facias. *See, e.g.*, *Black's Law Dictionary* 1474 (8th ed. 2004) (defining "sue out" as "[t]o apply to a court for the issuance of (a court order or writ)"). The statute next requires that the scire facias be served on the defendant. *See* Ark. Code Ann. § 16-65-501(b). This did not occur. Because it did not, we conclude that the court's 2009 order of revivor was void.

A writ of scire facias is a writ issued requiring a person against whom it is brought to show cause why a judgment should not be revived. *See Middleton*, 2012 Ark. 131, 388 S.W.3d 451. This court has previously recognized that the writ of scire facias has been deemed to occupy both the place of a declaration and a summons. *See Bohnsack v. Beck*, 294 Ark. 19, 740 S.W.2d 611 (1987). We have further observed that the issuance of the writ by the clerk starts the process of reviving a judgment. *See id.*

Arkansas law is long settled that service of valid process is necessary to give a court jurisdiction over a defendant. *See Raymond v. Raymond*, 343 Ark. 480, 36 S.W.3d 733 (2001). Our case law is equally well settled that statutory service requirements, being in derogation of common-law rights, must be strictly construed and compliance with them must be exact.

*See id.* *See also* 78A C.J.S. *Scire Facias* § 8 (2013) ("Statutory provisions with respect to service of the writ of scire facias must be strictly construed and followed."). Our statute setting forth the procedure under scire facias to revive a judgment has established the service requirements for the writ. *See, e.g.*, *Bohnsack*, 294 Ark. 19, 740 S.W.2d 611 (holding that Ark. R. Civ. P. 4(i) was not intended to govern writs of scire facias). While we have recognized that the statute does not place a time limit on the service of the writ, it is clear that the statute in fact requires service of the writ to be had. *See id.* *See also* Ark. Code Ann. § 16-65-501(b) (providing, in pertinent part, that "the scire facias *shall* be served") (emphasis added). And, as already noted, there is no dispute that the writ, which serves as a summons in these matters, was not issued by the clerk in 2009.

Arkansas Code Annotated § 16-65-108 (Repl. 2005) provides that "[a]ll judgments, orders, sentences, and decrees made, rendered, or pronounced by any of the courts of the state against anyone without notice, actual or constructive, and all proceedings had under judgments, orders, sentences, or decrees shall be absolutely null and void." And as this court has observed, a judgment rendered without notice to the parties is void. *See Sides v. Kirchoff*, 316 Ark. 680, 874 S.W.2d 373 (1994). When there has been no proper service and, therefore, no personal jurisdiction over the defendants in a case, any judgment is void ab initio. *See id.* *See also* 50 C.J.S. *Judgments* § 867 (2013) ("In a proceeding by scire facias to revive a judgment the issuance of a writ of scire facias is essential to the validity of the judgment of revival."). Because there was no issuance or service of the writ of scire facias in accord with our statute's service requirements, we cannot say that the circuit court erred in finding that the court's

2009 order of revivor was void.[9] For these reasons, the circuit court's order granting summary judgment is affirmed.

Affirmed.

*Hosto & Buchan, PLLC*, by: *Sammie P. Strange, Jr.*, and *Kimberly Eden*, for appellant.

*William L. Owen, P.A.*, by: *William L. Owen*, for appellees.

---

[9]As a final matter, Rose urges this court that equity demands that his judgment be revived; however, Rose neglects to cite us to any convincing authority for his proposition. The failure to provide convincing authority precludes our review on appeal. *See Brennan v. Wadlow*, 372 Ark. 50, 270 S.W.3d 831 (2008).